# NO. 12-12-00359-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KERRY WOODARD,* <br> *APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Kerry Woodard appeals his conviction for murder, for which he was sentenced to imprisonment for life. In one issue, Appellant argues that the evidence is legally insufficient to support his conviction. We affirm.

### BACKGROUND

Appellant began dating Valerie Mosby in 2009. In December 2009, Mosby and her three-year-old son, Zikeishun Lane, moved in with Appellant.[1] Sometime after 10:30 p.m. on December 6, 2010, Mosby and Appellant realized that Lane was not breathing and had no pulse. They rushed him to Memorial Hospital in Lufkin.

Lane's treating physician, Dr. Jerry Jenkins, observed that Lane had suffered significant injuries all over his body and suspected that Lane had been abused. Lane's heart was restarted and he began breathing again, but he never regained consciousness. He was flown to Texas Children's Hospital in Houston where he died on December 7, 2010.

---

[1] Lane did not live with Mosby and Appellant from March 2010 to October 2010. When Lane's father discovered that Appellant is a registered sex offender, he had Lane move out of Appellant's home. In October, Lane moved back to live with his mother and Appellant.

**Sheriff's Investigation**

The Angelina County Sheriff's Office investigated Lane's death. They believed that someone had abused Lane, and sought to determine the abuser's identity. Lane's several caregivers offered differing accounts of the relevant events.

Mosby initially told the investigators that she picked up Lane from Appellant's mother at approximately 10:45 p.m. She further stated that Lane was asleep and she did not realize anything was wrong until they arrived home. But Mosby later claimed that Appellant picked up Lane earlier that evening and that Lane was in the car when Appellant picked her up from work.[2] She further stated that she assumed Lane was asleep, but once they arrived home, Appellant told her that Lane was not breathing.

Appellant's and his mother's statements to authorities support Mosby's initial story. Appellant told Child Protective Services Special Investigator Coy Collins that he never was alone with Lane that night. He also told Collins that Mosby travelled alone to drop off Lane with Appellant's mother. When Collins pressed Appellant for an explanation, Appellant told him that he was a registered sex offender and, as a result, he was not allowed to be around his sister's children, who were with Appellant's mother at that time. Angelina County Sheriff's Investigator Davy Hill also questioned Appellant. Appellant told Hill that Mosby left with Lane before she went to work, and returned with him around 11:00 p.m. Appellant further told Hill that he had been at home the entire day. Appellant's mother told several investigators a similar story.

Mosby's subsequent account of the events in question was consistent with the factual statements offered by other witnesses. For instance, Appellant's father told investigating officers that Appellant picked up Lane around 6:00 p.m. or 7:00 p.m. Mosby's coworker, Belinda Moreland, saw Appellant waiting to pick up Mosby after work. But Moreland noted that Appellant uncharacteristically parked his vehicle in a dark area of the parking lot and was not playing his music loudly.

---

[2] Mosby claimed that she initially lied at Appellant's behest. According to Mosby, Appellant was controlling and abusive toward her, and he told her they needed to say he had not been alone with Lane because of his status as a registered sex offender.

2

**Trial Court Proceedings**

Appellant was charged by indictment with murder and capital murder.[3]  Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, Mosby's testimony was consistent with her later recital of the events given to investigators.  Mosby testified that she and Appellant dropped off Lane with Appellant's mother on December 6.  She further testified that Lane was not feeling well.  She stated that Lane had some bruises, but he did not have any significant injuries at the time Appellant drove her to work.  Mosby further stated that when Appellant arrived back at her workplace, Lane was in his car seat in the back seat of the vehicle, and Mosby thought Lane was asleep.  Mosby testified that when they arrived home, she took a bath while Appellant retrieved Lane.  According to Mosby, Appellant then informed her that Lane was not responsive, and they rushed him to the hospital.

Assistant Medical Examiner for the Harris County Medical Institute of Forensic Sciences Mary Lynn Anzalone testified that she performed an autopsy on Lane.  As a result, Anzalone determined that his death was a homicide caused by blunt trauma to his head and torso.  Anzalone testified that Lane suffered an enormous number of injuries over a lengthy time period.  She further testified that some of Lane's injuries may have been the result of an accident, but many were not.  Anzalone opined that Lane had been physically assaulted on numerous occasions and that one of the last physical assaults resulted in the injury that caused his death.

Anzalone consulted with Dr. Glenn Douglas Sandberg, a forensic neuropathologist.  Sandberg concurred that Lane was physically assaulted.  He testified that the physical assaults caused brain injuries to Lane.  He further testified that the last of these brain injuries occurred anywhere from a few hours to a day before his death.  Jenkins also testified that Lane was abused and that the last episode of this abuse occurred before 10:30 p.m. on December 6.

Appellant's nephew and niece each testified that Appellant hit Lane.  Appellant's nephew testified that "[Appellant] started hitting [Lane], laughing at him.  And when he'd cry, he'd get mad and hit him because he don't like all that hollering and stuff and crying."  Appellant's nephew further testified that Appellant hit Lane in the face and stomach.  He stated that he saw Appellant hit Lane with his hand, his fist, and a belt.  Appellant's niece testified that she observed Appellant hit Lane with his belt until Lane was bleeding.

---

[3] *See* TEX. PENAL CODE ANN. §§ 19.02 (b)(1), (2), (c); 19.03(a)(8), (b) (West 2011 & Supp. 2013).  Only the murder charge was submitted to the jury.

The jury found Appellant "guilty" of murder. The matter proceeded to a trial on punishment at which Appellant pleaded "true" to a prior felony conviction. Ultimately, the jury assessed Appellant's punishment at imprisonment for life and a $10,000 fine. This appeal followed.

## EVIDENTIARY SUFFICIENCY

In his sole issue, Appellant argues that the evidence is legally insufficient to support his conviction. Specifically, Appellant contends that the evidence is legally insufficient because he did not intentionally or knowingly kill Lane.

### Standard of Review

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–88, 61 L. Ed. 2d 560 (1979); *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd); *see also Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 310, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982). This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks*, 323 S.W.3d at 899–900; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented

4

actually supports a conclusion that the defendant committed the crime charged. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

To support Appellant's conviction for murder as alleged in the indictment, the State was required to prove that Appellant intentionally or knowingly caused Lane's death. *See* TEX. PENAL CODE ANN. § 19.02(b)(1). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## Identity of Lane's Assailant

In the instant case, the medical testimony consistently demonstrated that Lane was beaten to death by someone. During trial, the State conducted painstaking examinations of Jenkins, Anzalone, and Sandberg regarding the numerous injuries Lane suffered and the forces required to inflict those injuries. Their testimonies contained sufficient evidence for the jury to conclude that whoever injured Lane possessed the requisite intent to commit murder.

The focus of the Angelina County Sheriff's Office's investigation was to determine the identity of Lane's assailant. Appellant denied that he injured Lane or that he even was alone with him that night. But the record contains compelling evidence that supports the jury's contrary finding.

Appellant's mother testified that she took care of Lane on December 6, 2010. There is no evidence that she injured Lane, and he was not significantly injured when he left her house. Therefore, the identity of the person who picked up Lane from Appellant's mother was an important question for the jury to decide.

Appellant claimed that Mosby picked up Lane. But the jury was free to disregard his testimony. *See Brooks*, 323 S.W.3d at 899–900. On the other hand, the jury was entitled to believe Mosby's testimony that Appellant picked up Lane. When questioned by law enforcement, Appellant initially denied being at his parents' house at any time on December 6.

5

But he later admitted that he was at their house in the early evening. In considering this testimony, the jury could reasonably have determined that Appellant had an opportunity to pick up Lane. Indeed, in his initial interview with the police investigators, Appellant's father confirmed that Appellant exercised that opportunity. Moreover, Moreland testified that she saw Appellant waiting to pick up Mosby after work, and, uncharacteristically, Appellant was parked in a dark area of the parking lot and not playing his music loudly. Based on this testimony, the jury could have reasonably inferred that Appellant had Lane in his vehicle when he picked up Mosby.

Also, Appellant's sister testified that Lane had bruises when she saw him in November. She stated that she wanted Lane to be taken to a doctor because she believed that someone was physically assaulting him. She further stated that she asked her mother if Appellant had assaulted Lane. Appellant's nephew and niece also testified that Appellant had beaten Lane on prior occasions.

## Appellant's Alternative Theories

Appellant raised several alternative theories to explain the cause of Lane's death. Appellant argued to the jury that Mosby inflicted Lane's injuries. He also noted that Mosby admitted she threw Lane onto the sofa. But the record also indicates that Mosby claimed she lied about this incident. Moreover, Mosby testified that she never injured Lane. Further still, Jenkins testified that Lane's injuries occurred before 10:30 p.m. on December 6, and Mosby testified that her shift at work ended at 10:30 p.m.

Additionally, Appellant argued that Lane's injuries could have resulted from an accidental fall, a tricycle accident, rough play with cousins, or an automobile accident. However, the jury was entitled to disregard these theories as improbable and, instead, rely on the medical testimony indicating that Lane's injuries were caused by intentionally induced physical trauma.

Finally, two witnesses testified on Appellant's behalf that he was watching football with them on the evening of December 6 and that Lane was not with him. These witnesses each admitted that they never looked in Appellant's vehicle to see if Lane was there. What is more, we note that the jury could have discounted the testimony of these witnesses, each of whom was Appellant's longtime friend. The jury was also entitled to consider the fact that Appellant did not mention this alibi when he first was interviewed by law enforcement.

6

## Summation

The credibility of witnesses is a determination for the jury.  *See **Brooks***, 323 S.W.3d at 899–900.  Here, the jury was free to disbelieve Appellant's, his mother's, and his friends' testimony.  *See **id***.  Having examined the record in the light most favorable to the verdict, we conclude that the jury could have determined beyond a reasonable doubt that Appellant caused Lane's death with the requisite intent.  Therefore, we hold that the evidence is legally sufficient to support his murder conviction.  Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.


**BRIAN HOYLE**
Justice


Opinion delivered November 6, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

NOVEMBER 6, 2013

NO. 12-12-00359-CR

**KERRY WOODARD,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2012-0134)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*